**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Galati, ) | No. CV 04-1684-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| D & R Excavating, Inc.; Ronald Hartwigsen; Judy Hartwigsen; D & B of Lake Havasu, Inc., ) | |
| Defendants. ) | |

The court has considered Defendants' motion for partial summary judgment (doc. # 31), statement of facts (doc. # 32), errata (doc. # 34), and affidavit (doc. # 33), Plaintiff's response (doc. # 35) and controverting statement of facts (doc. # 39), and Defendant's reply (doc. # 42).

Plaintiff Tina Galati brought this action against her former employer, D & R Excavating, Inc. ("D&R"), along with D&R's president and owner, Ronald Hartwigsen, and his wife Judy Hartwigsen (collectively "Defendants").[1] Galati alleged violations of state law, Title VII, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

---

[1] The parties also later stipulated to the addition of D & B of Lake Havasu, Inc. as a defendant. (doc. # 21.)

1  § 1001 *et. seq.*, in relation to her discharge from D&R.  Defendants now move for partial
2  summary judgment on Galati's ERISA claim.

3  **I.     Background**

4  Galati alleges that she was discharged for having informed D&R's Vice President,
5  Dan Mitchell, that she had been sexually harassed by Ronald Hartwigsen and that other
6  improprieties were underway at D&R.  (*See, e.g.*, Compl. at ¶¶ 8-9, 16, 23.)  According to
7  Galati, D&R violated ERISA by failing to notify her upon discharge of her right to continue
8  her medical insurance, as required by 29 U.S.C. § 1161(a).  Section 1161(a) provides:

> **§ 1161. Plans must provide continuation coverage to certain individuals**
> **(a) In general.**  The plan sponsor of each group health plan shall provide, in accordance with this part [29 U.S.C. §§ 1611 *et. seq.*], that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

Termination of employment is a "qualifying event" triggering the plan sponsor's duty to provide notice under this section.  29 U.S.C. § 1163(2).

Defendants now move for summary judgment, arguing that D&R fell within the "small employer" exception to the notice requirement.  Section 1161(b) of Title 29 provides:

> **(b) Exception for certain plans.**  Subsection (a) shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year.

The parties principally dispute on this motion whether § 1161(b) exempted D&R from the notice requirement for 2003, the year in which Galati was discharged.  Because D&R employed various part-time employees in 2002 in addition to nearly 20 full-time employees, the parties vigorously disagree about the proper method of counting part-time employees under this section. Disposition of the motion thus requires the court to address two main issues: (1) the proper methodology of accounting for part-time employees when calculating the number of employees "employed . . . on a typical business day during the preceding

- 2 -

calendar year," and (2) whether Galati's evidence creates a genuine issue of material fact about how many employees D&R employed on a typical business day during 2002, the calendar year before Galati's discharge.

## II.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. *See also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the Court that there is an absence of evidence to support the nonmoving party's claims. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

**III.    Methodology of Accounting for Part-Time Employees**

Defendants argue that the "small employer" exception of 29 U.S.C. § 1661(b) should be interpreted in accordance with regulations issued by the Treasury Department, which utilize a full-time equivalency method of accounting for part-time employees. The full-time equivalency method counts part-time employees as a commensurate fraction of a full-time employee, according to the number of hours worked by the part-time employee each day or pay period. Galati responds that the Treasury Department does not have rule-making authority under ERISA and that its regulations are inconsistent with *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997), and the Congressional policy behind ERISA. Galati urges the court to disregard the Treasury Department's regulations and instead use the "payroll method" of accounting for part-time employees, which counts part-time employees like full-time employees.

**A.    Rulemaking Authority for the Treasury Regulations**

The statutory provision at issue in this case was enacted as part of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), which made parallel amendments to the Internal Revenue Code and ERISA. *Johnson v. Reserve Life Ins. Co.*, 765 F. Supp. 1478, 1480 (C.D. Cal. 1991) ("[T]he COBRA provisions were enacted both as part of the provisions of title 29 and as part of the Internal Revenue Code, title 26 of the United States Code."). The "small employer" exception is now located at both 26 U.S.C. § 4980B(d)(1) of the tax code and 29 U.S.C. § 1161(b) of ERISA.

Rulemaking authority for the two provisions is presumably distinct. The Secretary of the Treasury is authorized to make "all needful rules and regulations for the enforcement of" the tax code, 26 U.S.C. § 7805(a), whereas the Secretary of Labor is authorized to prescribe regulations to carry out the provisions of COBRA in ERISA. 29 U.S.C. § 1168. The statutory language of COBRA does not specifically permit the Secretary of Treasury to issue regulations interpreting the portion of COBRA that amended ERISA.

Only the Secretary of the Treasury, however, has issued regulations interpreting COBRA. The Treasury regulations interpreting COBRA are located at 26 C.F.R. §§ 54.4980B-1 through 54.4980B-10 and purport to interpret COBRA's provisions in both the tax code and ERISA. Part 54.4980B-1 provides:

> The rules in §§ 54.4980B-1 through 54.4980B-10 apply for purposes of section 4980B and generally also for purposes of the COBRA continuation coverage requirements in Title I of ERISA. However, certain provisions of the COBRA continuation coverage requirements (such as the definitions of group health plan, employee, and employer) are not identical in the Internal Revenue Code and Title I of ERISA. In those cases in which the statutory language is not identical, the rules in §§ 54.4980B-1 through 54.4980B-10 nonetheless apply to the COBRA continuation coverage requirements of Title I of ERISA, except to the extent those rules are inconsistent with the statutory language of Title I of ERISA.

Despite only referring to tax code provisions as authority, 26 C.F.R. § 54 (authority note), the Treasury regulations thus apply by their terms to ERISA "except to the extent . . . inconsistent with the statutory language."

Courts have widely held the Treasury regulations to be at least persuasive authority for interpreting the COBRA provisions of ERISA. Even before final adoption of the Treasury regulations, many circuit and district courts accorded them persuasive or controlling weight in interpreting COBRA's ERISA provisions. *E.g. Gaskell v. Harvard Coop. Soc'y*, 3 F.3d 495, 500 (1st Cir. 1993) (relying on proposed Treasury regulations to interpret ERISA provision and listing cases that have relied on them despite their interim status); *Lutheran Hosp. of Ind., Inc. v. Bus. Men's Assurance Co. of Am.*, 51 F.3d 1308, 1313 (7th Cir. 1995) (relying on proposed Treasury regulations in ERISA case and noting that "[c]ourts including the Eleventh Circuit have relied on these proposed regulations" (citing *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1581 (11th Cir. 1992)); *Swint v. Protective Life Ins. Co.*, 779 F. Supp. 532, 554 (S.D. Ala. 1991) (giving "great judicial deference" to Treasury's proposed regulations in interpreting ERISA); *Jiminez v. Mueblerias Delgado, Inc.*, 196 F. Supp. 2d 125, 129 (D.P.R. 2002) (applying proposed Treasury regulation in ERISA case); *Cotte v.*

1  *Cooperativa De Ahorro Y Credito Yabucoena*, 73 F. Supp. 2d 153, 156-57 (D.P.R. 1999)
2  (applying proposed Treasury regulation in ERISA case and noting that new final regulation
3  would change how part-time employees are counted); *Martinez v. Dodge Printing Centers,*
4  *Inc.*, 123 B.R. 77, 1991 U.S. Dist. LEXIS 442, Civ. No. 89-1711, *4-6 (D. Co. Jan. 9, 1991)
5  (applying proposed Treasury regulations in ERISA case); *Fritz v. Health and Welf. Dept.*,
6  2001 U.S. Dist. LEXIS 25173, Civ. No. 99-4747, *8-10 (N.D. Ill. Apr. 6, 2001) (applying
7  proposed Treasury regulations in ERISA case and noting that if final, the regulations would
8  be given controlling weight unless arbitrary, capricious or manifestly contrary to the statute);
9  *see also Communications Workers of Am. v. Nynex Corp.*, 898 F.2d 887, 892 n.2, 894 n.3
10 (2nd Cir. 1990) (citing proposed Treasury regulations in ERISA case but finding them
11 inapplicable under the facts); *In re Appletree Markets, Inc.*, 19 F.3d 969, 973 (5th Cir. 1994)
12 (holding in ERISA case that the proposed Treasury regulations "are entitled to no deference
13 until final"); *Oakley v. City of Longmont*, 890 F.2d 1128, 1133 (10th Cir. 1989) (refusing to
14 follow proposed Treasury regulations "[u]ntil the agency completes formal rule-making and
15 promulgates final regulations").  Galati has provided no case, and the court has found none,
16 suggesting that the Treasury regulations are inapplicable to ERISA's COBRA provisions
17 because the Treasury Department lacked rulemaking authority to issue them.

18         A district court in this circuit, moreover, has held that the Treasury Department does
19 have rulemaking authority for the COBRA provisions in ERISA.  In *Johnson v. Reserve Life*
20 *Insurance Company*, 765 F. Supp. 1478 (C.D. Cal. 1991), the district court decided whether,
21 as here, a defendant was subject to the "small employer" exception in 29 U.S.C. § 1161(b)
22 so as to be exempt from the duty to provide notice of continuation coverage under ERISA.
23 *Id.* at 1479.  In deciding whether to apply the proposed Treasury regulations, the court held
24 that the Treasury Department was an administrative agency charged with enforcement of
25 COBRA and that the court must therefore defer to the Treasury Department's interpretation
26 of both the tax code and ERISA so long as that interpretation is reasonable.  *Id.* at 1480-82.
27 The court found that COBRA's legislative history "reinforces the court's conclusion that the
28

1  Department of the Treasury is an administrative agency charged with enforcement and
2  implementation of at least this portion of ERISA" and that the proposed Treasury regulation's
3  interpretation was reasonable. *Id.* at 1482.
4        Other courts specifically addressing the extent of the Treasury Department's
5  rulemaking authority over ERISA's COBRA provisions have done so in ways suggesting that
6  *Johnson* was correctly decided. In *Gaskell v. Harvard Coop. Soc.*, 3 F.3d 495 (1st Cir.
7  1993), the First Circuit relied in part on the proposed Treasury regulations in determining the
8  duration of a plaintiff's continuation coverage under ERISA. *Id.* at 500. In a footnote, the
9  court explained that Congress had "delegated responsibility for the issuance of interpretive
10 regulations to three separate agencies: the Departments of Treasury, Labor, and Health and
11 Human Services. . . . To date, only the Treasury Department has proposed regulations under
12 the statute." *Id.* at 500 n.7. Additionally, the court in *Swint*, 779 F. Supp. 532, held that
13 deference was owed to the proposed Treasury regulations in evaluating an ERISA claim
14 since "the COBRA provisions are within the administrative jurisdiction of both the Treasury
15 and Labor Department." *Id.* at 554 n.54. The court further stated that the Treasury
16 Department's "official policies regarding continuation coverage . . . are given great judicial
17 deference" and that those policies deserve deference because they are reasonable, *id.* at 554,
18 suggesting that the Treasury Department's regulations receive deference of the kind shown
19 in *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)
20 (holding that a court must "not simply impose its own construction on the statute" but must
21 defer to agency constructions if reasonable). Notably, *Chevron*-style deference is applicable
22 only where "a court reviews an agency's construction of the statute *which it administers*," 467
23 U.S. at 842 (emphasis added), suggesting that the *Swint* court viewed the Treasury
24 Department as "administering" the parallel COBRA provisions of the tax code and ERISA.
25       Finally, deferring to the Treasury regulations is consistent with governmental
26 efficiency and the coordinated relationship between ERISA and the tax code. ERISA and
27 the tax code are interrelated, and cross-references between the two statutory compilations are
28

- 7 -

common especially in the COBRA provisions. *E.g.* 29 U.S.C. § 1167(1), (2), (4); *see also Krogh v. Chamberlain*, 708 F. Supp. 1235, 1239 n.7 (D. Utah 1989) ("[L]ooking at the ERISA group health plan definition, it appears Congress may have intended that the Department of the Treasury promulgate rules to interpret the COBRA small employer exemption."). Section 1204 of Title 29 highlights the associated relationship between the Department of Labor and the Department of Treasury with regard to all of ERISA, stating:

> **§1204.   Coordination between the Department of the Treasury and the Department of Labor**
> **(a)** Whenever in [ERISA] . . . the Secretary of the Treasury and the Secretary of Labor are required to carry out provisions relating to the same subject matter (as determined by them) *they shall consult with each other and shall develop rules, regulations, practices, and forms which,* to the extent appropriate for the efficient administration of such provisions, *are designed to reduce duplication of effort, duplication of reporting, conflicting or overlapping requirements, and the burden of compliance* with such provisions by plan administrators, employers, and participants and beneficiaries.

(Emphasis added.) Not only does it make sense for these Executive Department agencies to avoid duplicative or conflicting rules and regulations, they are required to do so by statute. It is appropriate for the court to avoid undermining their efforts.

Galati argues in response that the Treasury Department is not charged with protecting employee welfare and that these regulations, which as a practical matter subject fewer employers to the notice requirement of § 1161(a), are consequently contrary to the Congressional purpose behind ERISA. "ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans . . . ." *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir. 1985) (citations omitted). At the same time, however, other purposivist arguments cut against Galati's argument. ERISA was also intended "to protect employers from conflicting and inconsistent state and local regulation of such plans." *Id.* (citations omitted). More directly relevant to the small employer exception, "[t]he exception for employers with fewer than 20 employees reflects Congress' judgment that the costs and administrative burden associated with COBRA should not be imposed on small employers

- 8 -

and that imposing such requirements on small employers may discourage them from providing group health coverage to their employees." 66 Fed. Reg. 1844 (Jan. 10, 2001). In light of these conflicting policy goals incorporated into the statute, and without any specific legislative history on the issue, the court is unpersuaded by Galati's arguments.

In conclusion, the weight of authority suggests that the court should defer to the Treasury Department's interpretive regulations of ERISA's COBRA provisions. The Treasury Department's interpretative regulations of COBRA in ERISA will therefore be accorded deference as if its regulations were issued by an agency administering ERISA.

### B.  Overview of the Treasury Regulations

Before turning to the applicability of the Treasury regulations in this case, a brief description of them is in order. The regulations at issue here interpret the "small employer" exception to the continuation coverage notice requirement of 29 U.S.C. § 1161(a). The statutory language of the exception exempts an employer sponsoring an employee group health insurance plan from the notice requirement "if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b). The parties tacitly agree that the language "all employers maintaining such plan" refers in this case to D&R alone. *Cf. Johnson v. Reserve Life Ins. Co.*, 765 F. Supp. 1478, 1482 (C.D. Cal. 1991) (noting that an employer can maintain a separate plan such that it "need only count its own employees to determine its obligations"). This case consequently involves only interpretation of the language "normally employed fewer than 20 employees on a typical business day."

Part 54.4980B-2A-5(b) of Title 26, C.F.R. provides that "[a]n employer is considered to have normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year." "In determining the number of the employees of an employer, each full-time employee is counted as one employee and each part-time employee is counted as a

fraction of an employee, determined in accordance with paragraph (e) . . . ." *Id.* at § 54.4980B-2A-5(d). Paragraph (e) states:

> (e) An employer may determine the number of its employees on a daily basis or a pay period basis. The basis used by the employer must be used with respect to all employees of the employer and must be used for the entire year for which the number of employees is being determined. If an employer determines the number of its employees on a daily basis, it must determine the actual number of full-time employees on each typical business day and the actual number of part-time employees and the hours worked by each of those part-time employees on each typical business day. Each full-time employee counts as one employee on each typical business day and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee and the denominator equal to the number of hours that must be worked on a typical business day in order to be considered a full-time employee. If an employer determines the number of its employees on a pay period basis, it must determine the actual number of full-time employees employed during that pay period and the actual number of part-time employees employed and the hours worked by each of those part-time employees during the pay period. For each day of that pay period, each full-time employee counts as one employee and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee during the pay period and the denominator equal to the number of hours that must be worked during that pay period in order to be considered a full-time employee. The determination of the number of hours required to be considered a full-time employee is based upon the employer's employment practices, except that in no event may the hours required to be considered a full-time employee exceed eight hours for any day or 40 hours for any week.

In determining whether the "small employer" exception is met, for example, D&R chooses to calculate its number of employees on a pay period basis with pay periods of one week and 40-hour workweeks for full-time employees. (doc. # 34 at ¶ 5, Ex. 2 at ¶ 3.) For any particular week, then, D&R's part-time employees will count as X/40 of an employee, where X is the number of hours the part-time employee worked during that week. If the sum of part-time employees and full-time employees is less than 20 for a given week, then D&R is credited with one week of employing less than 20 employees. After accounting for all 52

1  weeks of the year, if the number of weeks D&R employed less than 20 employees is 26 or
2  more (50% of 52), then the "small employer" exception applies.

### C. Applicability of the Treasury Department Regulations

To determine whether to apply the Treasury regulations, the court must determine (1) whether the statutory language is silent or ambiguous and (2) if so, whether the Treasury regulations represent a reasonable interpretation of the statute. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 (9th Cir. 2006) (citing *Chevron*, 467 U.S. at 842-43); *see also Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1092 n.9 (9th Cir. 2006) (refusing to defer to agency interpretation because the statute was unambiguous). Where an agency with rulemaking authority adopts a regulation that "represents a reasonable accommodation of conflicting policies that were committed to the agency's care," the court should enforce the regulation "unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron*, 467 U.S. at 845 (citing *United States v. Shimer*, 367 U.S. 374, 382, 383 (1961)). As a general rule, the "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844 (footnote omitted).

The words "normally employed . . . on a typical business day" in the statute are silent as to the appropriate treatment of part-time employees and thus allow for regulatory interpretation on the issue. The Department of Labor has found similar statutory language sufficiently ambiguous to allow for regulatory interpretation on the issue of part-time employees, and the Supreme Court has noted those regulations approvingly. *Walters v. Metro. Educ. Enters.*, Inc., 519 U.S. 202, 207 (1997) (noting with approval the Department of Labor's adoption of regulations to account for part-time employees when interpreting the

1 language "employs 50 or more employees for each working day" in the Family and Medical
2 Leave Act of 1993). *Walters*, moreover, resolved a Circuit split as to how to account for
3 part-time employees under comparable statutory language — whether an employer "has" an
4 employee "for each working day in each of twenty or more calendar weeks" — suggesting
5 that the language here at least admits of differing interpretations with respect to its effect on
6 part-time employees. *Id.* at 205-06 (citing *Dumas v. Mount Vernon*, 612 F.2d 974, 979 n.7
7 (5th Cir. 1980) (adopting payroll method), *Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633, 634-
8 635 (1st Cir. 1983) (adopting payroll method), *EEOC v. Garden & Associates, Ltd.*, 956 F.2d
9 842, 843 (8th Cir. 1992) (adopting different method), and *Zimmerman v. North American
10 Signal Co.*, 704 F.2d 347, 354 (7th Cir. 1983) (adopting different method)).

11 The regulation is also based on a permissible interpretation of the statutory language.
12 The full-time equivalency method of accounting for part-time employees seeks to ameliorate
13 oddities in the law that accompanied other methodologies theretofore utilized to account for
14 part-time employees. Under the payroll method, for example, "an employee who works
15 irregular hours, perhaps only a few days a month, will be counted toward the []employee
16 minimum for every week in the month." *Walters*, 519 U.S. at 210 (noting "strange
17 consequences" that result from the payroll method). The full-time equivalency method, by
18 contrast, allows employers flexibility in hiring part-time employees as opposed to full-time
19 employees, without imposing upon them the concern of thereby becoming subject to
20 COBRA. Similarly, the full-time equivalency method is preferred by the Treasury
21 Department over the methodology espoused by the previous 1987 Proposed Regulations. In
22 the Explanation and Summary of Contents, the Treasury Department explained:

> An example can be used to illustrate how the 1987 rules were proposed to apply. In a calendar year two employees each employ 15 full-time employees and 12 part-time employees. Each part-time employee works 15 hours per week. Each employer has six typical business days each week. One employer schedules all 12 of the part-time employees to work two-and-a-half hours each typical business day per week. The other employer staggers the schedule of the part-time employees so that they each work seven-and-a-half hours on two typical

> business days per week, so that four part-time employees work on each typical business day. Under the 1987 proposed regulations, the part-time employees of the first employer counted as 12 employees whereas the part-time employees of the second employer counted only as four employees.
> . . . .
> There is no reason to distinguish, as the approach in the 1987 proposed regulations would have done, between two employers with identical numbers of full- and part-time employees based on the particular days that the part-time employees work.

66 Fed. Reg. 1843-44 (Jan. 10, 2001). Although it might be said that any calculation methodology will result in some degree of inconsistency, the full-time equivalency method is inherently logical and "represents a reasonable accommodation of conflicting policies that were committed to the agency's care." *Chevron*, 467 U.S. at 845 (citations omitted).

Galati nontheless argues that the court should adopt the payroll method of accounting for part-time employees, relying predominantly on *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997). In *Walters*, the Supreme Court interpreted statutory language in Title VII making that statutory scheme applicable to any employer who "has fifteen or more employees for each working day" during a certain period. *Id.* at 204 (citations omitted). Focusing on the plain meaning of the phrase "has an employee," and without authoritative regulations on the issue, the Court noted that "[i]n common parlance, an employer 'has' an employee if he maintains an employment relationship with that individual." *Id.* at 207 (citations omitted). The Court rejected the Seventh Circuit's holding that "an employer 'has' an employee for a particular working day . . . only when he is actually compensating the individual on that day," *id.* at 206, and held that "the payroll method represents the fair reading of the statutory language." *Id.* at 207.

The question now before the court, however, is not whether the statutory language is more fairly read in one way than in another. *See Chevron*, 467 U.S. at 843 n.11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."). The court need not decide, therefore,

- 13 -

1 whether *Walters* should be distinguished based on the distinct statutory language of Title VII. 2 *Compare* 42 U.S.C. § 2000e(b) ("'[E]mployer' means a person . . . who *has* fifteen or more 3 employees for each working day . . . ." (emphasis added)) *with* 26 U.S.C. § 1161(b) 4 (exempting health plans if "employers maintaining such plan normally *employed* fewer than 5 20 employees on a typical business day" (emphasis added)). Rather, the question is whether 6 "the statute is silent or ambiguous with respect to the specific issue," and if so, "whether the 7 agency's answer is based on a permissible construction of the statute." *Contract Mgmt., Inc.* 8 *v. Rumsfeld*, 434 F.3d 1145 (9th Cir. 2006) (citations omitted). For the reasons stated above, 9 the court answers each of these questions in the affirmative.

10 **IV.    Factual Discrepancies on the Motion for Summary Judgment**

11       Problems with the parties' evidentiary submissions prevent the court from issuing a 12 complete ruling at this time. Defendants present timesheets from the 52 pay periods in 2002 13 as evidence that D&R employed fewer than twenty employees in at least 26 of those periods. 14 (doc. # 33 at Ex. A.) The timesheets are summarized in a table in the attached affidavit of 15 Roxanne Mitchell (doc. # 33 at ¶ 5), but the table is inaccurate. Though Defendants 16 submitted a notice of errata with accompanying corrections to the summary table, the 17 information in the table remains incorrect. (*See* doc. # 34 at ¶ 3.)

18       For instance, the payroll period ending January 9, 2002, shows 13 employees having 19 worked 40 or more hours, including two salaried employees. (doc. # 33 at Ex. A at DRI-20 050.) Three other employees worked less than 40 hours, tallying 39.25, 22.5, and 39.25 21 hours respectively. (*Id.*) The summary table, therefore, should show 13 full-time employees 22 and 2.525[2] full-time equivalent employees. Instead, the summary table shows 15 full-time 23 employees and 2.46 equivalents for that week. (doc. # 34 at ¶ 3.) All other entries verified 24 by the court are similarly miscalculated.

---

[2] $(39.25/ 40 \text{ hours}) + (22.5/ 40 \text{ hours}) + (39.25/ 40 \text{ hours}) = 2.525$ full-time equivalent employees.

- 14 -

Galati's evidence on this motion is also summarized in a table that is unhelpful to the court. (doc. # 39 Ex. I.) Galati's table is unhelpful because it is based on the wrong unit of time and does not distinguish between full- and part-time employees. (*Id.*) Given that Defendants calculate their number of employees based on a pay period of one week with full-time employment set at 40 hours per pay period, the number of days an employee happened to work during the pay period or year is irrelevant.

**IT IS THEREFORE ORDERED** that:

1. Defendants shall have until April 13, 2006, to file a corrected table summarizing their evidence.

2. Galati shall have until April 20, 2006, to file a corrected table summarizing her evidence insofar as it is relevant under the legal principle accepted in this Order. Galati may file any objections to Defendants' table at that time.

3. Defendants shall have until April 27, 2006, to file any objections to Galati's corrected table.

DATED this 30th day of March 2006.

_____
Neil V. Wake
United States District Judge