**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Galati,              )<br>                                 )<br>         Plaintiff,         )<br>                                 )<br>vs.                            )<br>                                 )<br>                                 )<br>D & R Excavating, Inc.; Ronald )<br>Hartwigsen; Judy Hartwigsen; D & B of )<br>Lake Havasu, Inc.,        )<br>                                 )<br>         Defendants.     )<br>                                 )<br>_____) | No. CV 04-1684-PHX-NVW<br><br>**ORDER** |

The court has considered Defendants' motion for partial summary judgment (doc. # 31) and the additional submissions of the parties (docs. # 44, 45, 46.).

A more detailed factual background of this case is provided in the court's prior order. (doc. # 43.) Defendants D & R Excavating ("D&R"), D & B of Lake Havasu, Inc., Ronald Hartwigsen, and Judy Hartwigsen (collectively "Defendants") move for summary judgment on Plaintiff Tina Galati's claim that Defendants violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, by failing to notify her upon discharge of her right to continue her medical insurance. Defendants argue that D&R qualifies for the "small employer" exception, which exempts from ERISA's notice requirement employers that "normally employed fewer than 20 employees on a typical business day" during the year preceding the "qualifying event" giving rise to a notice obligation. 29 U.S.C. § 1161(a), (b). Here, Galati's discharge in 2003 was the qualifying

1  event, so Defendants argue that D&R employed fewer than 20 employees on a typical
2  business day in 2002. Galati, in response, has submitted evidence attempting to create a
3  triable issue of fact as to D&R's number of employees.

4  **I.     Summary Judgment Standard**

5  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall
6  be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions
7  on file show that there is no genuine dispute regarding the material facts of the case and the
8  moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (2004);
9  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must evaluate a
10 party's motion for summary judgment construing the alleged facts with all reasonable
11 inferences favoring the nonmoving party. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104,
12 1117 (9th Cir. 2001).

13 The party seeking summary judgment bears the initial burden of informing the Court
14 of the basis for its motion and identifying those portions of the pleadings, depositions,
15 answers to interrogatories, and admissions on file, together with the affidavits, if any, which
16 it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp.*
17 *v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with
18 a properly supported motion, the party opposing the motion "may not rest upon the mere
19 allegations or denials of his pleading, but ... must set forth specific facts showing that there
20 is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate
21 against a party who "fails to make a showing sufficient to establish the existence of an
22 element essential to that party's case, and on which that party will bear the burden of proof
23 at trial." *Id.* at 322. *See also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir.
24 1994). Although the initial burden is on the movant to show the absence of a genuine issue
25 of material fact, this burden may be discharged by indicating to the Court that there is an
26 absence of evidence to support the nonmoving party's claims. *See Singletary v.*
27 *Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

28

- 2 -

## II. The Treasury Regulations

In its previous order, the court determined that the Treasury Regulations interpreting ERISA apply to this case. (doc. # 43.) The court reiterates its brief discussion of those regulations here.

### A. Overview of the Treasury Regulations

Part 54.4980B-2A-5(b) of Title 26, C.F.R. provides that "[a]n employer is considered to have normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year." "In determining the number of the employees of an employer, each full-time employee is counted as one employee and each part-time employee is counted as a fraction of an employee, determined in accordance with paragraph (e) . . . ." *Id.* at § 54.4980B-2A-5(d). Paragraph (e) states:

> (e) An employer may determine the number of its employees on a daily basis or a pay period basis. The basis used by the employer must be used with respect to all employees of the employer and must be used for the entire year for which the number of employees is being determined. If an employer determines the number of its employees on a daily basis, it must determine the actual number of full-time employees on each typical business day and the actual number of part-time employees and the hours worked by each of those part-time employees on each typical business day. Each full-time employee counts as one employee on each typical business day and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee and the denominator equal to the number of hours that must be worked on a typical business day in order to be considered a full-time employee. If an employer determines the number of its employees on a pay period basis, it must determine the actual number of full-time employees employed during that pay period and the actual number of part-time employees employed and the hours worked by each of those part-time employees during the pay period. For each day of that pay period, each full-time employee counts as one employee and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee during the pay period and the denominator equal to the number of hours that must be worked during that pay period in order to be considered a full-time employee. The determination of the number of hours required to be considered a full-time employee is based upon the employer's employment

- 3 -

> practices, except that in no event may the hours required to be considered a full-time employee exceed eight hours for any day or 40 hours for any week.

In determining whether the "small employer" exception is met, for example, D&R chooses to calculate its number of employees on a pay period basis with pay periods of one week and 40-hour workweeks for full-time employees. (doc. # 34 at ¶ 5, Ex. 2 at ¶ 3.) For any particular week, then, D&R's part-time employees will count as X/40 of an employee, where X is the number of hours the part-time employee worked during that week. If the sum of part-time employees and full-time employees is less than 20 for a given week, then D&R is credited with one week of employing less than 20 employees. After accounting for all 52 weeks of the year, if the number of weeks D&R employed less than 20 employees is 26 or more (50% of 52), then the "small employer" exception applies.

## B. Application of the Treasury Regulations

Defendants have provided timesheets and a summary thereof as evidence that D&R employed fewer than 20 employees in 26 or more pay periods of 2002. The timesheets indicate that D&R employed fewer than 20 employees in almost every pay period of 2002. (doc. # 44 (showing fewer than 20 employees in 46 of 52 pay periods).) Galati acknowledges that Defendants' summary of the timesheets is accurate (doc. # 45 at 1:17-19) but argues that other evidence raises a genuine issue of material fact as to how many employees D&R had during certain pay periods in 2002. Galati's evidence that D&R had additional employees not accounted for by the timesheets falls into five categories: (1) employees paid under the table; (2) the effect of holiday and vacation time; (3) reports filed with the Department of Economic Security; (4) temporary employees; and (5) evidence of "other" discrepancies.

The net effect of Galati's five categories of evidence, if submitted to and accepted by a jury in their entirety, would be to reduce to 22 the number of pay periods in which D&R employed the requisite number of employees. (*See id.* at Ex. A at 4.) As discussed above,

- 4 -

1   if Galati's evidence were uniformly accepted, D&R would therefore be 4 pay periods short
2   of the 26 required in order for the exception to apply.
3         The court's rejects Galati's first two categories.  Rejection of either category alone
4   would independently suffice to dispose of this motion.  To defeat Defendants' motion for
5   summary judgment, Galati would need the additional "employees" dependent upon both of
6   these categories.

### 1. Employees Paid Under the Table

8         The only employee-specific evidence Galati submits with respect to employees
9   allegedly paid under the table but not already accounted for in D&R's timesheets relates to
10  Bruce Owens.  Galati submits her own affidavit testimony that Bruce Owens was employed
11  under the table by D&R "a number of times in the year 2002."  (doc. # 39 Ex. A at ¶ 4.)
12  Galati's affidavit states:

> There were a number of employees who worked for D & R "under the table," by which I mean who were paid in cash and who do not appear on the payroll sheets. One of these "phantom" employees was, for example, Bruce Owens, who worked for D & R over a broad span of time, including a number of times in the year 2002. . . . I do not know the exact dates or hours that Mr. Owens . . . worked in 2002.

17  *Id.*  No other evidence in the record supports Galati's contention that Bruce Owens was
18  employed by D&R in 2002.
19        Galati calculates the effect of Bruce Owens' alleged "phantom" employment by adding
20  one full-time employee to each of the pay periods in 2002.  (doc. # 45 Ex. A.)  This addition
21  is essential for Galati on this motion; even accepting all of Galati's other arguments, without
22  this addition D&R would have employed the requisite number of employees in 31 of 52 pay
23  periods.  (*See id.* at Ex. A at 4/3/02, 6/26/02, 7/31/02, 9/11/02, 9/18/02, 10/2/02, 10/9/02,
24  10/30/02, 11/6/02.)  Rejection of this argument thus constitutes sufficient grounds to dispose
25  of this motion.
26        No reasonable jury could find or would be permitted to find, based solely on Galati's
27  testimony, that D&R employed Bruce Owens as a full-time employee.  Nor would a jury be

1 permitted to find that Bruce Owens was employed during the specific pay periods in which 2 Galati now needs such full-time employment to have occurred. To defeat a motion for 3 summary judgment, affidavit testimony unsupported by other evidence in the record must set 4 forth facts sufficiently specific for the factfinder to make the conclusion urged by the 5 profferring party. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

6 In *Hansen*, the IRS moved for summary judgment submitting evidence that a notice 7 and demand had been sent to plaintiffs as required by 26 U.S.C. § 6303(a). *Id.* In 8 opposition, plaintiffs submitted an affidavit stating that "on or about the assessment date on 9 our Certificate of Assessments and Payments we never received in the mail a § 6303 Notice 10 and Demand or any other document from the IRS." *Id.* The court held that the affidavit did 11 not raise a genuine issue of material fact because plaintiffs' statement that they did not 12 receive the notice and demand did "not show the notice was not sent." *Id.*

13 Like the affidavit testimony in *Hansen*, Galati's affidavit testimony is likely relevant 14 but is insufficiently tailored for a factfinder to make the specific conclusion urged by Galati. 15 Whether or not the notice and demand in *Hansen* was received, the specific issue before the 16 court was whether it was sent; because the affidavit did not speak to that specific issue, it did 17 not create a genuine issue of material fact regarding that issue. Here, whether or not Bruce 18 Owens was around and working for D&R is likely relevant, but not to the specific issue now 19 before the court. The specific issue now relevant is how much Bruce Owens worked during 20 nine specific pay periods in 2002. (*See* doc. # 45 Ex. A at 4/3/02, 6/26/02, 7/31/02, 9/11/02, 21 9/18/02,10/2/02, 10/9/02, 10/30/02, 11/6/02.) Galati's affidavit does not state how many 22 hours Bruce Owens worked or that he worked during those nine pay periods. Galati's 23 affidavit is therefore insufficient for a factfinder to make the conclusions urged by Galati and 24 does not raise a triable issue.

25 **2.     The Effect of Holiday and Vacation Time**

26 Galati argues that vacation and holiday pay provided to employees should be 27 incorporated into the calculation of the "number of hours worked by that employee" under

26 C.F.R. § 54.4980B-2A-5(e). Although the court recognizes that in weeks where multiple employees are given 8 hours of holiday pay, the measure of full-time employment for that week perhaps should be fewer hours (*i.e.* a 32-hour workweek for that pay period would be "full-time"), Galati has neither distinguished between holiday pay and vacation pay or made that argument.  Moreover, the regulations seem to accord an employer the ability to make such a determination, recounting that "[t]he determination of the number of hours required to be considered a full-time employee is based upon the employer's employment practices." To the extent Galati seeks generally to count vacation and holiday pay as "hours worked," her argument flies in the face of the plain text of the regulation.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment on COBRA Claim  (doc. # 31) is granted.

DATED this 9th day of May 2006.

_____
Neil V. Wake
United States District Judge

- 7 -